UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| BRUCE A. KOESTER, and ) | Case No. 09-20311-659 |
| LISA M. KOESTER, ) | Judge Kathy A. Surratt-States |
| ) | Chapter 7 |
| Debtors ) | |
| ) | |
| PREMIER BANK, ) | **Adversary No. 09-2013-659** |
| ) | |
| ) | **PUBLISHED** |
| Plaintiff, ) | |
| ) | |
| -v- ) | |
| ) | |
| BRUCE A. KOESTER, and ) | |
| LISA M. KOESTER, ) | |
| ) | |
| Defendants. ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The matter before the Court is Plaintiff Premier Bank's Motion for Summary Judgment and

Statement of Undisputed Material Facts, Suggestions in Support of Premier Bank's Motion for

Summary Judgment, Debtors' Response to Motion for Summary Judgment and Statement of

Disputed Material Facts, Suggestions in Opposition to Plaintiff's Motion for Summary Judgment and

Premier Bank's Reply in Support of its Motion for Summary Judgment.  The pertinent facts are set

forth below.

## FINDINGS OF FACT

Debtors Bruce Koester and Lisa Koester (hereinafter collectively "Debtors") filed a petition

under Chapter 7 of the Bankruptcy Code on June 23, 2009.  Debtors were the officers and directors

of Dimensional Builders, Inc. (hereinafter "Dimensional"), a construction and property development

company, which also filed bankruptcy in 2009.  Plaintiff Premier Bank (hereinafter "Plaintiff") and

Debtors acting on behalf of Dimensional, have a longstanding credit relationship which began in

April of 2002.  Exhibit I. Until 2007, Debtors were able to maintain a good payment history on

Dimensional's loans from Plaintiff. Exhibit I.

Debtors executed at least two unlimited guaranty agreements wherein Debtors personally guaranteed repayment of debts owed by Dimensional under loan documents executed between Plaintiff and Dimensional.  Exhibit A; Exhibit B. The first guaranty agreement was executed on November 25, 2002 (hereinafter "2002 Guaranty") and the second guaranty agreement was executed on August 27, 2008 (hereinafter "2008 Guaranty").  Exhibit A; Exhibit B.

Debtors provided a personal financial statement to Plaintiff on or about July 31, 2008 (hereinafter "2008 PFS"). Exhibit F.  On the 2008 PFS, Debtors listed an unencumbered ownership of a property located in Bellflower, Missouri valued at $120,000.00 (hereinafter "Bellflower Property"). Exhibit F.  Personal financial statements that were previously submitted by Debtors to Plaintiff also listed ownership of the Bellflower Property.  For example, Debtors' March 2006 Personal Financial Statement listed ownership of the Bellflower Property free and clear of liens at a value of $80,000.00 and Debtors' September 2007 Personal Financial Statement listed ownership of the Bellflower Property free and clear of liens at a value of $120,000.00. Exhibit G.  Debtors did not list the Bellflower Property on any personal financial statement prior to 2006, despite Debtors' belief that Debtors had an interest in the Bellflower Property before 2006. Debtor Lisa Koester Aff. ¶ 15; Debtor Bruce Koester Aff. ¶ 16.

In a February 2007 facsimile, Debtor Lisa Koester communicated several corrections to be made to Debtors' March 2006 Personal Financial Statement, the culmination of which further improved Debtors' financial situation. Exhibit G.  Debtor Lisa Koester's facsimile does not communicate any error concerning the Bellflower Property.  Exhibit G.

The Bellflower Property was not owned by Debtors but was owned by Debtor Bruce Koester's parents. Debtor Bruce Koester Dep. 78: 21-23; Debtor Lisa Koester Aff. ¶1.  Debtor Lisa Koester claims that in August of 2008, Tim Litteken (hereinafter "Mr. Litteken"), Plaintiff's Branch Officer, approached Debtors about the possibility of using the Bellflower Property to secure a loan.

2

Debtor Lisa Koester Dep. 18: 20-25, 19:1-2; Debtor Lisa Koester Aff. ¶ 1-2.  Debtor Lisa Koester states that she explained to Mr. Litteken that half of the Bellflower Property was informally given to Debtor Bruce Koester and that Debtors were consulting with attorneys about potentially purchasing the remaining half from Debtor Bruce Koester's parents. Debtor Lisa Koester Aff. ¶ 3.  Debtors claim that discussions began to transfer title to the Bellflower Property to Debtors in 2007 however the actual transfer was halted due to Debtor Bruce Koester's father's declining health and because Debtors were unable to come up with the money to purchase the remaining half of the Bellflower Property. Debtor Bruce Koester Dep. 78: 9-20.  Debtor Lisa Koester states that at that time, she asked Mr. Litteken whether the Bellflower Property needed to be removed from the 2008 PFS at which point Mr. Litteken did not deem that necessary and thus did not instruct Debtors to remove the Bellflower Property from the 2008 PFS.  Debtor Lisa Koester Dep. 19: 4-7; Lisa Koester Aff. ¶4-5.

On or about August 25, 2008, Plaintiff conducted an internal Customer and Financial Analysis Report on Dimensional (hereinafter "Financial Report") wherein Plaintiff noted that Dimensional had a particularly difficult year, as did many construction businesses. Exhibit I.  The Financial Report states that Dimensional's net worth was $17,097.00 at that time.  The Financial Report features a "Guarantor Analysis" which refers to Debtors' 2008 PFS in stating that Debtors' total assets valued $1.997 million and total debt was $1.3 million. Exhibit I.  The Financial Report states that in 2008, Debtors had a net worth of $696,000.00 which includes the Bellflower Property as an unencumbered asset valued at $120,000.00. See Exhibit F; Exhibit I.  The Financial Report also refers to Debtors' 2007 Personal Financial Statement which shows that Debtors' 2007 net worth was $695,553.00, which also included the value of the Bellflower Property.  The Financial Report further noted that prior to the current market decline in construction, Debtors handled "all previous loans in a good manner." Exhibit I.

On or about August 27, 2008, Dimensional was granted Loan #27653 by Plaintiff in the

3

amount of $60,000.00 plus interest and other costs set forth under the terms of the loan (hereinafter "2008 Loan"). Exhibit C.  The 2008 Loan was secured by two properties owned by Debtors: 115 E Main Street, Warrenton, MO 63383 and 7.5 acres on Pickering Street, Montgomery City, MO 63361, in addition to being guaranteed by Debtors per the 2008 Guaranty. Exhibit C; Exhibit B.  At the time the 2008 Loan was granted, there were at least two other outstanding loans and deeds of trust executed between Dimensional and Plaintiff (Loan #25420 and Loan #25422), and thus guaranteed by Debtors, which totaled over $350,000.00 (hereinafter "Dimensional Loans").  The Dimensional Loans were both incurred on October 31, 2006 and thus guaranteed by the 2002 Guaranty.  The Dimensional Loans were also secured by two properties owned by Dimensional (hereinafter "Collateral Properties").

In the Dimensional bankruptcy case, this Court granted Plaintiff relief from the automatic stay to foreclose on the Collateral Properties.  Plaintiff was the best and highest bidder on the Collateral Properties at the foreclosure sale.  After the sale, there remained a deficiency in the amount of $30,627.00 to satisfy the Dimensional Loans.  Debtors did list Plaintiff's claim in the amount of $30,627.00 in Debtors' bankruptcy schedules.  Debtors did not list a debt for the 2008 Loan in the amount of $60,000.00.  Further, the Bellflower Property is not listed as an asset on Debtors' Schedule A.

Plaintiff argues that Debtors intentionally made a written statement that was false in order for Dimensional to obtain the 2008 Loan.   Plaintiff argues that Plaintiff reasonably relied on Debtors' written 2008 PFS which stated that Debtors owned the Bellflower Property and in so relying, Plaintiff agreed to grant Dimensional the 2008 Loan and proceeded to create the 2008 Guaranty.  Therefore, Plaintiff argues that pursuant to Section 523(a)(2)(B), the debt for both the 2008 Loan and the deficiency amount from the sale of the Collateral Properties which collectively total $108,899.94 including fees and costs should be excepted from discharge.

Debtors argue that Debtor Lisa Koester disclosed to Mr. Litteken that Debtors did not own

4

the Bellflower Property when Mr. Litteken approached Debtors in August 2008 about using the Bellflower Property as collateral for the 2008 Loan.  Debtors state that Debtors listed the Bellflower Property on Debtors' Personal Financial Statements, including the 2008 PFS, because Debtors believed they had an informal interest in 50% of the Bellflower Property, and that Debtors would be able to purchase the remaining 50% from Debtor Bruce Koester's parents.  Debtors later realized that the transfer would not occur as initially anticipated.  Debtors therefore argue that Plaintiff was aware that the Bellflower Property was not actually owned by Debtors as was listed on the 2008 PFS but Debtors state that Mr. Litteken did not deem removal of this information from the 2008 PFS to be necessary.

Debtors further argue that Plaintiff was aware or should have been aware that Debtors' financial situation was declining.  Debtors argue that had Plaintiff conducted routine credit checks, Plaintiff would have itself developed a more accurate picture of Debtors' financial situation and thus, would have been able to make more sound judgment and potentially determine that Debtors could not guarantee any more debt on behalf of Dimensional.  Debtor Lisa Koester Dep. 86: 9-17.  Thus, while Debtors argue that they did not produce any false written statements with intent to deceive since they verbally communicated the truth to repudiate any contrary written statement regarding title of the Bellflower Property, Debtors also argue that Plaintiff did not reasonably rely on the 2008 PFS before issuing the 2008 Loan because information regarding Debtors' dismal financial situation was available to Plaintiff had Plaintiff used its investigative resources.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334 (2009) and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (2009).  Venue is proper in this District under 28 U.S.C. § 1409(a) (2009).

## CONCLUSIONS OF LAW

Under Rule 56(c) of the Federal Rules of Civil Procedure, as made applicable under Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550 (1986). The moving party has the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Id.* at 323. Once the movant carries its burden, the burden shifts to the non-movant. *Id.*  In ruling on a motion for summary judgment, a court must view all facts in a light most favorable to the non-moving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan,* 864 F.2d 622, 624 (8th Cir. 1989)(citing *Trnka v. Elanco Prods. Co.*, 709 F.2d 1223, 1224-25 (8th Cir. 1983)).

Under Section 523(a)(2)(B), any debt obtained for "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive" will be excepted from discharge.  11 U.S.C. § 523(a)(2)(B) (2009); *In re Binns,* 328 B.R. 126, 129 (B.A.P. 8th Cir. 2005).

For purposes of Section 523(a)(2)(B), a statement is materially false if it "paints a substantially untruthful picture of a debtor's financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *In re Bohr,* 271 B.R. 162 (Bankr. W.D. Mo. 2001); *In re Capelli,* 261 B.R. 81, 90 (Bankr. D.Conn. 2001).

The plaintiff must demonstrate both that it actually relied upon the false financial statement and that its reliance was reasonable under the circumstances. *In re Johnson*, 131 B.R. 848, 854

6

(Bankr. W.D. Mo. 1991).  Partial reliance is all that is necessary; the financial statement need only be a contributing cause to the decision to extend credit. *Johnson*, 131 B.R. at 854. The reasonableness of the creditor's reliance on the financial statement is based on an assessment of the totality of the circumstances. *In re Pontow,* 111 F.3d 604, 610 (8th Cir. 1997); *In re Ghere,* 393 B.R. 209, 216 (Bankr. W.D. Mo. 2008); *In re Bohr,* 271 B.R. at 168.  The court may consider if there were any "red flags" that would have alerted the creditor to the possibility that the financial statement was not accurate and whether minimal investigation would have revealed the inaccuracy. *In re Pontow,* 111 F.3d at 610 (citing *In re Coston*, 991 F.2d 257, 261 (5th Cir.1993) (en banc)).

The debtor may have produced a statement with intent to deceive without having a malignant heart; actual malice is not required. *In re Webb*, 256 B.R. 292, 297 (Bankr. E.D. Ark. 2000); *In re Ghere*, 393 B.R. at 215; *In re Bohr*, 271 B.R. at 169.  A creditor may establish intent to deceive by proving that debtor knew the statement was false or that debtor acted with reckless indifference to or reckless disregard of the accuracy of the information in a debtor's financial statement. *In re McCleary,* 284 B.R. 876, 888 (Bankr. N.D. Iowa 2002); *In re Ghere*, 393 B.R. at 215; *In re Bohr*, 271 B.R. at 169*.*  Because direct evidence of such intent is often absent, it may be inferred from the circumstances. *In re Ghere*, 393 B.R. at 215.  The debtor cannot overcome an inference of intent to deceive merely with unsupported assertions of honest intent. *In re Ghere*, 393 B.R. at 215; *In re Bohr*, 271 B.R. at 169.

Plaintiff's claim incorporates at least two separate debts: $30,627.00 as and for the deficiency balance after the foreclosure sale of the Collateral Properties and $60,000.00 for the 2008 Loan which Dimensional has not repaid.  Plaintiff asserts that under the 2002 Guaranty, Plaintiff should be liable for the deficiency amount from the sale of the Collateral Properties. Plaintiff alleges that the 2008 PFS contained a false statement which was made in writing with intent to deceive in that Debtors wanted to show their ability to guarantee the 2008 Loan.  This false statement could not be relied upon for the granting of the Dimensional Loans which pre-date

Debtors' submission of the 2008 PFS.  Plaintiff has not alleged any facts which indicate that, in

order to guarantee the Dimensional Loans per the 2002 Guaranty, Debtors made a materially false

statement in writing with intent to deceive Plaintiff upon which Plaintiff reasonably relied.  To do so,

Plaintiff would need to allege and show evidence that a false statement was made in writing to

Plaintiff by Debtors at the time the 2002 Guaranty was executed since the 2002 Guaranty is the

basis for Debtors' personal liability for the deficiency from the sale of the Collateral Properties.

Plaintiff has not alleged any false statement made in writing by Debtors with regard to the 2002

Guaranty.

The Court notes that Debtors' March 2006 Personal Financial Statement includes the

Bellflower Property and that the Dimensional Loans were incurred on October 31, 2006.  However

any reliance on the 2006 Personal Financial Statement would not be reasonable.  The Dimensional

Loans were secured by the Collateral Properties which were owned by Dimensional.  Plaintiff's lack

of reliance on the March 2006 Personal Financial Statement is further noted by the fact that Plaintiff

did not require a new personal guaranty by Debtors at the time the Dimensional Loans were

granted, as Plaintiff required in 2002 and 2008.  Moreover, Plaintiff has not submitted a financial

report wherein Plaintiff references to the 2006 Personal Financial Statement or any document which

shows that Plaintiff relied upon Debtors' claimed ownership of the Bellflower Property before

Plaintiff issued the Dimensional Loans.  Therefore, based on a consideration of the totality of the

circumstances, summary judgment in favor of Plaintiff is not appropriate with respect to the deficient

amount of $30,627.00.

The Court will now discuss the 2008 Loan.  Debtors first argue that Debtor Lisa Koester

verbally repudiated the accuracy of the 2008 PFS and therefore, there was no materially false

statement made in writing.  Debtors admit that they submitted and executed a statement in writing,

the 2008 PFS, which represented that Debtors owned the Bellflower Property.  Debtors assert that

they believed that they had an informal interest in 50% of the Bellflower Property and that Debtors

8

intended to purchase the remaining 50% and obtain title from Debtor Bruce Koester's parents. Debtors state that Debtor Lisa Koester verbally informed Mr. Litteken of this fact but Mr. Litteken stated that an amendment to the 2008 PFS was not necessary.

Plaintiff submits the affidavit of Mr. Litteken who states that Debtors represented in writing that Debtors owned the Bellflower Property, free and clear of any liens or other encumbrances. Mr. Litteken's affidavit states that Plaintiff relied upon the 2008 PFS in allowing for the 2008 Guaranty and in granting the 2008 Loan to Dimensional.

Debtors have not submitted any written documents which support Debtors' argument. For example, Debtors previously submitted a facsimile to Plaintiff which detailed inaccuracies in Debtors' March 2006 Personal Financial Statement. This facsimile is silent as to the truth regarding Debtors' interest in the Bellflower Property. Plaintiff has also submitted the Financial Report, an internal financial analysis dated August 25, 2008 which makes specific reference to Debtors' 2008 PFS. Debtors' 2008 PFS states that Debtors' had a net worth of $696,000.00 which includes the unencumbered value of the Bellflower Property which is valued at $120,000.00. At that time, the Financial Report revealed that Dimensional's net worth was merely $17,097.00. Within one week of the Financial Report, Plaintiff granted Dimensional a loan in the amount of $60,000.00 which was secured by two properties owned by Debtors, not Dimensional, and was guaranteed by Debtors via the 2008 Guaranty.

Indication in writing that Debtors owned property valued at $120,000.00 free of all liens and encumbrances is material. Debtors have made this assertion twice prior, albeit that the value of the Bellflower Property in 2006 was $80,000.00. The 2008 PFS reported a net worth of $696,000.00; $120,000.00 (or 17%) of which was the Bellflower Property. The Financial Report provides clear indication that Plaintiff relied, or at least partially relied on Debtors' 2008 PFS in assessing Debtors' financial condition.

As the matter before the Court is a motion for summary judgment brought by Plaintiff, the

9

Court must assume the facts most favorable to Debtors.  However, even if it were true that Debtor

Lisa Koester informed Plaintiff that Debtors did not own the Bellflower Property but rather Debtors

had an informal 50% ownership interest in the Bellflower Property, this does not change the fact

that a materially false statement was made in writing by Debtors concerning Debtors' financial

condition.

As noted in *In re Futterman:*

> One of the few changes in 11 U.S.C. § 523(a)(2) from section
> 17(a)(2) of the old act is the addition of the word "reasonable" in
> subparagraph (B).   H.R. No. 95-595 Cong., 1st Sess. 364
> (1977)...Congress recognized the practice of creditors who would
> induce debtors into making false financial statements on which the
> creditors did not rely but hoped to obtain leverage against debtors
> with the threat of the exception to discharge.  See HR. No. 95-595,
> Cong., 1st Sess. 130-31 (1977).  The requirement of reasonable
> reliance under 523(a)(2)(B) makes abusive practices of this type less
> likely to succeed.

*In re Futterman,* 35 B.R. 102, 104 (Bankr. D. Conn. 1983) (citation omitted).  There is no allegation

that Plaintiff induced Debtors into making any false financial statement.  Debtors admit that their

March 2006 and September 2007 Personal Financial Statements contained the same materially

false statement, and Debtors only claim to have informed Plaintiff of this in August of 2008.

Debtors' contention of an honest intent does not change the fact that the statement was false.  As

noted above, actual malice is not required to prove that a debtor produced a false statement with

intent to deceive. *In re Webb*, 256 B.R. at 297; *In re Ghere*, 393 B.R. at 215; *In re Bohr*, 271 B.R.

at 169.  A creditor may establish intent to deceive by proving that debtor knew the statement was

false or that debtor acted with reckless indifference to or reckless disregard of the accuracy of the

information in a debtor's financial statement. *In re McCleary,* 284 B.R. at 888; *In re Ghere*, 393 B.R.

at 215; *In re Bohr*, 271 B.R. at 169*.*  Here, the Court finds that there was a false statement made

in writing concerning Debtors' financial condition for which the only potential reason for making said

statement in writing, with full knowledge of its premature truth, and thus falsity, was to improve

Debtors' financial condition.  Debtors at no point owned the Bellflower Property.  Debtors Personal Financial Statements, particularly the 2008 PFS, should have never reflected this purported ownership interest until ownership was certain.  Moreover, the Bellflower Property is not listed on Debtors Schedule A as property which Debtors now own, or even as property in which Debtors have a 50% interest.  Debtors argue that Plaintiff's reliance on the 2008 PFS was disproportional and reckless and as such, Plaintiff should be denied summary judgment.  Debtors also suggest that Plaintiff should have taken the initiative to review Debtors' credit report which would have demonstrated that Debtors were in a declining financial state and likely could not have guaranteed any more of Dimensional's debt.  Both parties agree that Debtors and Plaintiff had a longstanding credit relationship dating at least eight years.  In the Financial Report, Plaintiff acknowledges that Debtors are enduring financial hardship that is akin to many in the construction business and that prior to this market decline, Debtors handled all prior loans in a good manner.  Debtors further admit that they believed they would surmount the market hardships and wanted to weather the storm.  Given the goodwill created over the years between Plaintiff and Debtors, it is not unreasonable for Plaintiff to rely in part on Debtors' credit history and for Plaintiff to be willing to help Debtors weather the storm.  It is not only disingenuous but legally irrelevant for Debtors to now state that Plaintiff should have been more prudent and should not have granted the 2008 Loan.

Viewing all the facts in the light most favorable to Debtors, the requirements of Section 523(a)(2)(B) are met by clear and convincing evidence as to the 2008 Loan.  A separate order will be entered consistent with the above.

_____
KATHY A. SURRATT-STATES
United States Bankruptcy Judge

DATED:  September 29, 2010
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Jonathan C. Browning
Mariea & Sigmund, LLC
310 Monroe Street
Jefferson City, MO 65101

Premier Bank
c/o Mariea & Sigmund, LLC
310 Monroe
Jefferson City, MO 65101

Fredrich J. Cruse
The Cruse Law Firm
718 Broadway
PO Box 914
Hannibal, MO 63401-0914

Bruce and Lisa Koester
607 Pickering St.
Montgomery City, MO 63361